UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-00103

DAVID GRIFFIN                                                                                   PLAINTIFF

v.

BAKER & TAYLOR, INC.                                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant's motion to dismiss for improper venue or, in the alternative, motion to transfer venue. (Def.'s Mot., Docket Number ("DN") 10.) The Plaintiff has responded. (Pl.'s Resp., DN 11.) The Defendant has replied. (Def.'s Reply, DN 15.) Fully briefed, this matter is now ripe for adjudication. Having considered the matter and being fully advised, the Defendant's motion to transfer is **GRANTED**.

### I.

To resolve the present motion the Court must decide two issues. First, the Court must determine whether a substantial part of the events giving rise to the Plaintiff's claim arose in this district, so that it is properly venued in the Western District of Kentucky pursuant to 28 U.S.C. § 1391(b). If so, the Court must additionally decide whether this action should be transferred to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

The Court holds that this action is properly venued in the Western District of Kentucky because a substantial part of the events giving rise to the Plaintiff's claim occurred in this district. Despite proper venue, the Court additionally holds that this action should be transferred to the Western District of North Carolina pursuant to § 28 U.S.C. § 1404(a).

### II.

Plaintiff David Griffin ("Griffin"), a citizen of Tennessee, filed this action against

Defendant Baker & Taylor, Inc. ("B&T") on July 20, 2012. Griffin asks this Court to declare that a personal guaranty bearing his signature is non-binding and unenforceable as to the debts that College Book Rental Company, LLC ("CBR"), owes to B&T. Griffin and his business partner, Charles Jones ("Jones"), each own a fifty percent interest in Integrated Computer Solutions, Inc., and Blackrock Investments, LLC. In turn, these companies wholly-own CBR and another entity, SE Book Company, LLC (SEB). CBR and SEB are in the business of selling and renting college text books.

Jones separately owns C.A. Jones Management Group, LLC ("CJM"). Throughout the period relevant to this action, CJM operated CBR and SEB on behalf of Griffin and Jones. Griffin has never actively participated in the management or daily operation of any of these companies, including CBR. For the purposes of the present motion, Griffin is best described as a passive investor in CBR, one who supplied considerable financial support for the company's operation but did not participate directly in its management.

B&T is a Delaware corporation with its principal place of business in North Carolina. The company's primary business is the distribution of books, videos, and music products to libraries, retailers, and other vendors.

The issues in the present case arise from a November 2011 financing agreement whereby B&T sold a substantial quantity of textbooks to CBR on credit in exchange for payment at a later date. As of April 2012, however, CBR had defaulted on the debts incurred under this agreement, and B&T notified CBR, Griffin, and Jones that the entire amount of the debt was due. In addition to the notice given to CBR, B&T also notified Griffin that he was personally liable for CBR's debt because he had executed a personal guaranty on behalf of CBR. Griffin contends that he did not personally guarantee any debt CBR owes to B&T. Following the commencement

of this declaratory judgment action, B&T filed a separate lawsuit against CBR, Griffin, and Jones in the Western District of North Carolina on August 24, 2012. In that case, B&T seeks to recover the debts at issue from CBR, Griffin, and Jones.[1]

When considering a motion to dismiss, the Court must accept all well-pleaded allegations in Griffin's complaint as true. *See Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). As they relate to the guaranty allegedly signed by Griffin on behalf of CBR, the facts are as follows. In late 2010, Jones advised Griffin that he was considering entering into a business agreement between CBR and B&T. In December 2010, without further notice to Griffin, CBR and B&T agreed to a "Fulfillment Distribution Agreement" whereby B&T agreed to fulfill book orders received by CBR. This agreement did not require any payments from CBR to B&T.

In March 2011, Griffin received a B&T form entitled "Personal Guaranty." (*See* Blank Personal Guarantee, DN 1-1.) At the time he received this document, the "Applicant" portion (where the entity incurring the debt was to be listed) was blank. On March 9, 2011, Griffin signed the blank guaranty as a "Guarantor" and electronically transmitted a copy from his business office in Helena, Arkansas to Jones in Murray, Kentucky. An exact copy of this form, bearing only Griffin's signature, was forwarded to B&T on the same date. At some point after March 9, 2011, the blanks on the Personal Guaranty were completed so as to include CBR as the Applicant, and this completed copy was again transmitted from Kentucky to B&T. According to Griffin, he did not witness or consent to the listing of CBR as the Applicant on the Personal Guaranty. He alleges that as of March 9, 2011, he had no knowledge of the business dealings

---

[1] In a supplemental filing, Griffin notified the Court that CBR's creditors placed CBR in Chapter 11 Involuntary Bankruptcy on October 4, 2012. *See In re College Book Rental Co., LLC*, 3:12-BK-09130 (Bankr. M.D. Tenn.). The bankruptcy petition stays B&T's claims against CBR in North Carolina. Accordingly, the only claim B&T can pursue in the North Carolina action is an enforcement of the guarantees against Griffin and Jones.

between CBR and B&T, even though the Personal Guaranty was contained on a B&T form.

In August 2011, CBR and B&T entered into an "Online Customized Bookstore Agreement" for the purposes of marketing new and used books on certain Internet websites. Griffin alleges that he had no knowledge of this agreement or any obligations arising under it.

By late November or early December 2011, however, Griffin became aware that CBR and B&T had entered into a memorandum of understanding whereby "'B&T would provide financing and acquisition of certain textbooks and related textbook products as defined by CBR, and CBR will meet its payment obligations for said inventory.'" (Compl., DN 1, ¶ 20 (quoting Mem. of Understanding, DN 1-2, p. 1)). Jones, acting as chief executive officer of CJM, signed the memorandum of understanding on behalf of CBR.[2] On December 8, 2011, Griffin advised CBR and Jones that "[n]othing should be done with this proposal [the memorandum of understanding] until Mr. Griffin understands more about it." (*Id.* at ¶ 22.) Contrary to Griffin's request, CBR, by way of Jones's involvement, proceeded with the contemplated agreement and incurred the substantial debts currently at issue in this action. In all, Griffin claims that he objected to this transaction, had no knowledge that it proceeded despite his objections, and the Personal Guaranty is unenforceable because CBR was added to the form without his consent or knowledge.

B&T now seeks to dismiss this action because of improper venue under 28 U.S.C. § 1391(b), or, alternatively, to transfer the case to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

### III.

Prior to addressing the merits of B&T's motion, the Court pauses to correct a legal

---

[2] The agreement outlined in the memorandum of understanding was apparently never formalized into a written contract as contemplated by the memorandum's terms. (*See* Mem. of Understanding, DN 1-2, p. 1 ("[B&T] and [CBR] plan to engage in a written agreement between them . . . .").)

4

misconception held by both parties.  In moving to dismiss this action for improper venue under 28 U.S.C. § 1391(b), B&T relies heavily on what it categorizes on a forum-selection clause in the Personal Guaranty signed by Griffin.  In response, Griffin expends significant efforts arguing that the clause relied upon by B&T is not a forum-selection clause and should not receive any weight in the dismissal analysis.

When considering whether an action is properly venued in a particular district under § 1391(b), courts may not consider the effect of a forum-selection clause.  *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002) ("[A] forum-selection clause should be enforced as a matter of contract, not an issue of proper venue.").  Although a forum-selection clause may determine where a case is ultimately litigated, it has no effect on where it may be initiated.  Despite an applicable forum-selection clause, an action may be filed in any district: 1) where the defendant resides, 2) in which a substantial part of the events giving rise to the claim occurred, or 3) if no other district is available, where the defendant is subject to the court's personal jurisdiction.  *See* 28 U.S.C. § 1391(b).

Forum-selection clauses have no dispositive effect on venue.  Rather, they should only be considered in light of a motion to transfer made pursuant to 28 U.S.C. § 1404(a).  *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) ("We hold that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause . . . .").  "[T]he Supreme Court in *Stewart* held that a federal court sitting in diversity jurisdiction should treat a request to enforce a forum selection clause that permits venue in another federal district as a motion to transfer venue under the federal venue statute[.]"  14D Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 3803.1 (3d ed. 2012).  Accordingly, "in a diversity case, a forum selection clause should be considered by the district court *only*

within the context of a Section 1404(a) motion to transfer." *Id.* (emphasis added).

Any argument that the alleged forum-selection clause is determinative of venue under § 1391(b) is misplaced. The Court will only consider the effect of the supposed forum-selection clause in the context of § 1404(a) should this case be properly venued in the Western District of Kentucky pursuant to § 1391(b).

## IV.

The Court finds that this district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events leading to Griffin's claim occurred in the Western District of Kentucky. B&T argues that this district is inappropriate because events giving rise to this case occurred in Arkansas, Tennessee, and North Carolina, but only a small portion of events, if any, occurred in Kentucky. While it is undeniable that some events occurred in those states, B&T's arguments are unavailing because even if those events were substantial, the events occurring in Kentucky were equally substantial given the nature of Griffin's claim. Under § 1391(b), a case may be instituted in a district so long as *a substantial part* of the events occurred there, even if it that district does not have the most or even the greatest contacts with the action. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) (citing *Setco Enter. Corp. v. Robbins*, 19 F.3d 1278, 1280-81 (8th Cir. 1994) (stating that under § 1391, courts "no longer ask which district among the two or more potential forums is the 'best' venue. Rather, [they] ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not the other forums had greater contacts")).

Griffin asks the Court to declare that the Personal Guaranty bearing his signature is unenforceable against him as to the debts incurred by CBR. Assuming Griffin's version of events to be true, after he transmitted an electronic version of the Personal Guaranty to Jones in

6

Kentucky, someone, whether Jones or a subordinate, completed the document by adding CBR as the Applicant without Griffin's direction, permission, or consent. The allegedly fraudulent addition of CBR to the Personal Guaranty occurred in Kentucky, and this alone is sufficient for the Court to determine that a substantial part of the events giving rise to this case occurred in this district even if other districts have substantial contacts with this case. Accordingly, this action is properly venued in the Western District of Kentucky for the purposes of § 1391(b).

## V.

Although properly venued in the Western District of Kentucky, B&T also moves, pursuant 28 U.S.C. § 1404(a), to transfer this action the Western District of North Carolina. The Court holds that no forum-selection clause governs the parties' dispute and that on balance of the factors discussed below, this action should, in the interest of justice, be transferred to the Western District of North Carolina.

### A.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). The text of § 1404(a) requires a district court to conduct a two-step determination when ruling on a motion to transfer. First, the court must determine if the action could have originally been filed in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[The] transfer power is . . . expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'"). If the case could have been pursued in the transferee district, then the transferor court must decide whether the case should be transferred in order to "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and

7

expense . . . .'" *Id.* (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)). Courts should give consideration to the following factors when conducting the transfer analysis: (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties; (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) a forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interests of justice based upon the totality of the circumstances. *See, e.g.*, *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Racing, Inc.,* 406 F. Supp. 2d 751 (E.D. Ky. 2005) (quoting *Viron Int'l Co. v. David Boland, Inc.,* 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002)); *Excelsior Designs, Inc. v. Sheres,* 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003).

The permissive language of § 1404(a) gives district courts broad discretion when deciding whether to transfer a case. *Reese v. CCH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Courts of this district hold that the moving party bears the burden of proving that transfer is proper. *See Lorenzana v. 2nd Story Software, Inc.*, No. 4:12-CV-00021-JHM, 2012 U.S. Dist. LEXIS 95119, at *6 (W.D. Ky. July 10, 2012) (citations omitted); *Powerscreen USA, LLC v. D & L Equip., Inc.*, No. 3:07-CV-433-S, 2008 U.S. Dist. LEXIS 57248, at *3 (W.D. Ky. July 28, 2008) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

**B.**

B&T seeks to transfer this case to the Western District of North Carolina and may only do so if this action could have been commenced in that district. *See* 28 U.S.C. § 1404(a). The parties are completely diverse in the present case. Griffin is a citizen of Tennessee and B&T is a

Delaware corporation with its principle place of business in North Carolina. Accordingly, Griffin could have commenced this action in the Western District of North Carolina. *See* 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in any district "in which [the] defendant resides"). Section 1404(a)'s requirement that a case may only be transferred to a district where the case could have been brought does not bar B&T's motion to transfer.

### C.

Griffin could have commenced this action in the Western District of North Carolina, and B&T now seeks transfer to that district. A balancing of the required considerations counsels in favor of transfer.

First, a case may be transferred to another district if doing so would prove convenient for the parties. Convenience is generally a matter of the parties' physical location in relation to the plaintiff's choice of forum. Griffin is a resident of Nashville, Tennessee with a business office in Helena, Arkansas. B&T is incorporated in Delaware and has its principle place of business in North Carolina. If for no other reason than the cost of transportation, the Western District of Kentucky is more convenient for Griffin, while the Western District of North Carolina is more convenient for B&T and its employees. A choice of either district will work some disadvantage and additional costs on the party farthest from that district. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff . . . ." *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003). There is such a "tie" in this case. B&T is disadvantaged by the Western District of Kentucky in much the same way that Griffin would be disadvantaged by the Western District of North Carolina. In such a situation, the plaintiff's choice of forum controls. Although the convenience

9

of the parties weighs against transfer, this factor, alone, is not outcome-determinative.

Second, a case may be transferred if doing so would be more convenient for the potential witnesses. The convenience of the witnesses has been recognized as "perhaps the most important factor in the transfer analysis." *Ghaith v. Rauschengerger*, No. 09-14336, 2010 U.S. Dist. LEXIS 6993, at *8 (E.D. Mich. Jan. 28, 2010) (citations omitted). Although convenience to party witnesses is important, "[i]t is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (citations omitted). Indeed, "the location of the majority of non-party witnesses in one of the two districts generally will tip the balance in favor of that district, regardless of where the party witnesses or their employees reside." 17 James Wm. Moore, *Moore's Federal Practice* § 111.13[1][f][iii] (3d. ed. 2012) (citations omitted).

Neither party has supplied the Court with a list of potential witnesses, but an examination of the pleadings and briefs reveals that witnesses will likely be located in Arkansas, Kentucky, North Carolina, and Tennessee. Most significantly, some of the non-party witnesses in this case, like Jones and CBR, are already parties in the case filed by B&T in the Western District of North Carolina and are therefore subject to compulsion by that court. Accordingly, that court has the authority to reach witnesses who are non-parties in this case but are parties to the proceedings in that district. The ability of the Western District of North Carolina to compel witnesses who would otherwise be non-party witnesses in this case weighs in favor of transfer.

Third, the Court considers the location of the operative events giving rise to this lawsuit. As discussed above in the § 1391(b) analysis, Griffin alleges that at some point after March 9, 2011, Jones or another person affiliated with CJM or CBR added CBR as the Applicant on

Griffin's personal guarantee without Griffin's permission or consent. To the extent that someone fraudulently added CBR to the guaranty or acted outside of the scope authority granted to them by Griffin, it appears that those events may have occurred in Kentucky. This factor weighs against transfer.

Fourth, the location of relevant documents and other evidence must be considered. B&T asserts that the Western District of North Carolina is the most proper venue because the majority of physical evidence in the form of documents and other records is stored and maintained at its headquarters in that district. Such information includes, among other things, Griffin's personal financial records that he transmitted to B&T in December 2011. The location of physical evidence such as documents weighs in favor of transfer. *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) ("Federal courts have long recognized that two of the factors supporting a change of venue are convenience of the witnesses and the location of records and documents."). This factor weighs in favor of transfer.

Fifth, the Court considers the law that is to govern the Personal Guaranty between Griffin and B&T should it be found enforceable. According to the language of the guaranty, the agreement "shall be governed by the laws of the State of North Carolina, without giving effect to the conflict of laws provision thereof." (Personal Guaranty, DN 1-1.) Clearly, this language dictates that North Carolina law controls any issues arising under the guaranty. This factor weighs in favor of transfer. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of law and in law foreign to itself.").

Finally, the Court must consider the most contentious issue between Griffin and B&T as

it relates to the motion to transfer: whether the Personal Guaranty contains a forum-selection clause. B&T contends that this case must be transferred to the Western District of North Carolina because the following language contained in the Personal Guaranty is a forum-selection clause:

> This Guaranty shall be governed by the law of the State of North Carolina, without giving effect to the conflict of laws provision thereof. Guarantor hereby consents to the jurisdiction of the State and Federal courts located in Charlotte, North Carolina.

(Personal Guaranty, DN 1-1.) B&T argues that by consenting to the jurisdiction of the federal and state courts of North Carolina, Griffin has agreed to adjudicate any dispute arising under the Personal Guaranty in that state. Based on the plain language of the clause at issue, however, the Court cannot agree with B&T's position. This clause is not a forum-selection clause.

The clause relied upon by B&T does not bear any of the hallmarks normally associated with a binding forum-selection clause. It cannot be a forum-selection clause because it contains no language indicating that it applies in the event of a "dispute," "controversy," "action," or "case" between the parties. Instead, it is an agreement that North Carolina courts have jurisdiction over the Guarantor. By consenting to the jurisdiction of the courts of North Carolina the Guarantor has merely agreed that those courts have jurisdiction over his person. But this in no way limits other courts from having concurrent having jurisdiction over the Guarantor and does not direct that all controversies between the parties must be resolved by the courts of North Carolina.

Additionally, the clause, even if a forum-selection clause, lacks language that would allow the Court to determine whether it is permissive or mandatory. *See Rivera v. Centro Medico de Turabo*, 575 F.3d 10, 17 (1st Cir. 2009) ("Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory.").

12

"Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere. . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." 14D Wright, *et al.*, *supra,* § 3803.1. Clearly the clause at issue, if it can even be construed as a forum-selection clause, is permissive and not mandatory. Nothing in its language mandates that controversies between the parties be resolved by the courts of North Carolina. Because the clause – even if a forum-selection clause – is permissive rather than mandatory, it is not binding on this Court and does not require transfer to the Western District of North Carolina. To the extent, however, that Griffin has consented to jurisdiction of North Carolina courts, this weighs slightly in favor of transfer.

On balance, the above-considered factors counsel in favor of transfer. This is especially true where the guaranty at issue may be governed by the laws of North Carolina and where the Western District of North Carolina already has jurisdiction over individuals who are non-party witnesses to this action but who are parties in a substantially similar action before that court.

## CONCLUSION

Defendant Baker & Taylor, Inc., moves to dismiss this action for improper venue or, alternatively, to transfer this action to the Western District of North Carolina. For all of the foregoing reasons, **IT IS HEREBY ORDERED** that the Defendant's motion to transfer is **GRANTED**. The Clerk shall transfer this action to the Western District of North Carolina and strike it from this Court's active docket.